# EXHIBIT "A"
# PART 2 OF 5

| Plaintiffs Complaint | Case: |
|---|---|

## PARTIES

(1) Plaintiffs Michael Benson Sparlin and Sharon Jeanette Sparlin are husband and wife, are resident citizens of Tucson, Pima County, Arizona, and have been Pima County residents at all times relevant to the events that form the basis of the Plaintiffs Complaint.

(2) Currently known defendants are:

    a. Service Provider COUNTRYWIDE HOME LOANS, INC ("COUNTRYWIDE") is a New York corporation licensed to do business in Arizona, is a wholly owned subsidiary of Countrywide Financial Corporation, and is or was a licensed mortgage banking organization.

    b. Service Provider BAC HOME LOAN SERVICING, L.P., ("BAC"), is a limited partnership with its principal place of business located in Austin, Texas and is authorized to do business in Arizona. BAC is a subsidiary of Bank of America, N.A., a North Carolina Corporation.

    c. BANK OF AMERICA, N.A., ("BOA"), is 100% owned by Bank of America Corporation, a publicly traded company.

    d. On July 1, 2008, Bank of America Corporation announced that it had completed its purchase of Countrywide Financial Corporation, including COUNTRYWIDE and Countrywide Home Loans Servicing, LP.

    e. Nominee MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), is a corporation organized and existing under the laws of Delaware.

    f. Trustee RECONTRUST COMPANY, N.A., ("RECONTRUST"), is a non-deposit trust company and a wholly-owned subsidiary of Bank of America, N.A. that services defaulted mortgages in a number of states, including Arizona.

    g. Law firm of BRYAN CAVE, LLP ("CAVE"), a Limited Liability Partnership organized and existing under the laws of the state of Missouri.

    h. MICHAEL B. DVOREN, ESQ. individually, from the law firm of CAVE

    i. COREE E NEWMEYER, ESQ. individually, from the law firm of CAVE; hereinafter collectively referred to as the "Defendants".

# INTRODUCTION

Plaintiff seeks quiet title, as well as statutory and actual damages, based on Defendants:

a. violation of the **St Germain Act 12 USC 1701j-3(d)(8)**; and

b. violations of the **Helping Families Save Their Home Act of 2009**, Public Law 111-22 of the 111th Congress, S896 **Section 404** signed by the President on May 19, 2009 **(15 U.S.C. §1641)**; and

c. violation of the Fair Debt Collection Practices Act ("FDCPA") **(15 U.S.C. §1692)**; and

d. violation of the Arizona Debt Collection and Consumer Protection Statutes **Title 20, Chapter, 4, Article 15**; and

e. breach of contract violation of paragraph 20 of a Deed of Trust dated January 2, 2007 and recorded in the Pima County Recorder's Office January 8, 2007 as Docket 12966, Page 3332, Sequence 20070050717; and

f. violation of Section 2.01 of the Pooling & Servicing Agreement of the BCAP LLC Trust 2007-AA2 for failure to properly endorse the note and assign the deed of trust; and

g. Corporate *Assignment of Deed of Trust* signed by D.R. Couch, Assistant Secretary of MERS on April 15, 2010 and recorded in the Pima County Recorder's Office on April 19, 2010, Docket 13790, Page 2565, Sequence 20100740639 is invalid and void; and

h. failure to meet conditions precedent with regards to the Deed of Trust, paragraph 24 "LENDER may, for any reason or cause, from time to time, remove Trustee and appoint a Successor Trustee." *Substitution of Trustee* was signed by Naomi Dudek, Assistant Secretary of Deutsche Bank National Trust Company, as Trustee on behalf of BCAP LLC Trust 2007-AA2, not by Lender UAMC.

i. violation of ARS 33-411.01 which states that "Any document evidencing the sale or transfer of real estate shall be recorded in the county in which the property is located and within sixty days of the transfer."

j. violation of ARS 33-412 which states that "Deed of trust and mortgages of whatever kind, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law."

| Plaintiffs Complaint | Case: |
|---|---|

## JURISDICTION AND VENUE

(3) Venue is proper in this judicial district pursuant to **28 U.S.C. § 1391(b)** because the events and wrong doings alleged in this complaint occurred within the District of Arizona.

(4) This is an action that includes violations of the **Helping Families Save Their Home Act of 2009, Section 404. (15 U.S.C. §1641** *et seq.*)

(5) This is an action that includes violations of **Section 6 of the Real Estate Settlement and Procedures Act (12 U.S.C. § 2605)(a)**

(6) This is an action that includes violations of **A.R.S. 33-411.01; 33-412; and 44-1522.**

(7) The State of Arizona is a Non-Judicial state and Plaintiffs are entitled to the protections and requirements provided under the Arizona laws and Statutes.

## BACKGROUND

(8) The address of subject property is 7922 S Clarkson Court, Tucson, Arizona 85765, whose legal description is:

> Lot 133, of VISTA MONTANA ESTATES PHASE ONE, according to the Map or Plat thereof of record in the office of the county recorder, Pima County, Arizona, in book 58 of Maps and Plats at page 96 thereof and as amended by declaration of scrivener's error recorded in Docket 12773 at Page 5485.

(9) A Deed of Trust was recorded January 8, 2007 in the records of Pima County, AZ. (Docket 12966, Page 33332, Sequence 20070050717) and relates to said property.

(10) According to the first paragraph of the Deed of Trust the "Lender" is Universal American Mortgage Company, LLC, ("UAMC") a Limited Liability Company organized and existing under the laws of Florida, whose mailing address is listed 700 Northwest Avenue 3rd Floor, Miami, Florida, 33172-3139.

(11) The "Lender is the beneficiary under this Security Instrument." The identity of the Lender does NOT change with an *Assignment of the Deed of Trust*.

(12) At some unknown point, COUNTRYWIDE became the mortgage loan service provider.

(13) The Promissory Note and Deed of Trust reflect MERS as the nominee.

(14) At some unknown point, BAC became the mortgage loan service provider.

(15) On or about May 20, 2011, Plaintiff received a letter from BAC indicating a transfer of the mortgage loan service provider from BAC to BOA with an effective date of July 1, 2011.

| Plaintiffs Complaint | Case: |
|---|---|

## FACTS

(16) Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(17) A Promissory Note on said property is dated January 2, 2007.

(18) A Deed of Trust was recorded January 8, 2007 in the records of Pima County, AZ. (Docket 12966, Page 33332, Sequence 20070050717) and relates to said property.

(19) As evidenced by a letter dated April 18, 2011 from the law offices of Fennemore Craig, PC, the original Lender UAMC "is not the holder of the mortgage or debt." (EXHIBIT 1)

(20) Plaintiffs were unable to locate any *Assignment of the Deed of Trust* in the Pima County Recorder's Office dated January 31, 2007 through June 13, 2011 evidencing a transfer of the Deed of Trust from Lender UAMC to any entity.

(21) At some point COUNTRYWIDE became the mortgage loan service provider.

(22) Plaintiffs have checked the local Pima County Records and find no assignment dating from January 31, 2007 through June 13, 2011 which assigns the Deed of Trust from Lender UAMC to COUNTRYWIDE.

(23) Upon Plaintiffs information and belief, the Promissory Note has subsequently been sold repeatedly to other undisclosed parties who have all failed to properly register said sales with the Pima County Recorder's Office, thereby, obscuring the true holder of the Promissory Note and depriving Pima County of the proper and rightful filing fees.

(24) Plaintiffs have located a recorded *Assignment of Deed of Trust* dated April 19, 2010 (Docket 13790, Page 2566, Sequence 20100740639).

(25) The *Assignment of Deed of Trust* is signed and dated April 15, 2010 by D.R.Couch of MERS.

(26) The Assignment is from MERS to Deutsche Bank National Trust Company as Trustee on behalf of BCAP LLC Trust 2007-AA2.

(27) Upon Plaintiffs information and belief, the promissory note was securitized and placed into a mortgage backed security pool titled "BCAP LLC Trust 2007-AA2" which was filed with the Securities and Exchange Commission on March 22, 2007, SEC #333-140720-01, Accession #914121-746.

(28) The Securities and Exchange Commission website reflects a cut-off date of the BCAP LLC Trust 2007-AA2 as March 1, 2007. (EXHIBIT 2)

| Plaintiffs Complaint | Case: |
|---|---|

(29) Plaintiff alleges and believes that the sale on January 31, 2007 was to COUNTRYWIDE HOME LOANS, INC. per the Pooling and Servicing Agreement ("PSA") for the BCAP LLC Trust 2007-AA2. (EXHIBIT 3)

(30) According to the PSA, the originator is listed as COUNTRYWIDE HOME LOANS, INC.

(31) According to the PSA, COUNTRYWIDE HOME LOANS SERVICING, LP is the service provider.

(32) According to the PSA, the depositor is listed as BCAP, LLC

(33) According to the PSA, the Trustee is listed as DEUTSCHE BANK NATIONAL TRUST COMPANY. ("DEUTSCHE")

(34) According to the PSA, the issuer is listed BCAP, LLC Trust, 2007-AA2

(35) The cut-off date of the PSA is listed as March 1, 2007.

(36) The PSA for the "BCAP LLC Trust 2007-AA2 Mortgage pass-thru Certificates", requires by New York trust law, that the note be endorsed to the pool and physically delivered by the closing date of the PSA, which in this instant case is March 29, 2007.

(37) When the notes are transferred out of a trust, pursuant to MERS own rules, it must be recorded. *Gomez v. Countrywide Bank, FSB, 2:09-cv-01489-RCJ-LRL (10/26/2009)*. Plaintiff is unable to locate any such transfer recording, which is in direct violation of their own PSA and MERS regulations and guidelines.

(38) Plaintiffs contacted Lender UAMC and Service Provider COUNTRYWIDE through the vehicle of a Qualified Written Request ("QWR"), under the authority of the **Truth-In-Lending Act ("TILA") § 1604(e), 15 U.S.C. § 1601** et seq. (1968) and **1692** et seq., and the **Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692c**, and the **Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2605(e)** and **Regulation X at 24 C.F.R. § 3500**, to verify numerous items including, but not limited to, verification and validation of the alleged debt. The documents mailed to Defendants all contained the verbiage "NOTICE TO AGENT IS NOTICE TO PRINCIPAL".

(39) Defendants failed to respond within the 20 days required and also failed to resolve the issues within 60 business days in direct violation of **Section 6 of RESPA**. Non-compliance is a violation of the act which gives rise to a claim for actual and statutory damages under **15 USC 1640.**

| Plaintiffs Complaint | Case: |
|---|---|

1  (40)  Defendant RECONTRUST filed a *Notice of Trustee's Sale* on April 19, 2010. (Docket
2  13790, Page 2570, Sequence 20100740641).
3  (41)  The property is currently scheduled for Trustee Sale **June 17, 2011** and Plaintiffs
4  believe that even if sale is postponed that sale is imminent.
5  (42)  Plaintiff sent a *Qualified Written Request* ("QWR") to Lender UAMC on January 19,
6  2010, tracking #870539982246.
7  (43)  Plaintiff sent a *Qualified Written Request* ("QWR") to COUNTRYWIDE on January
8  19, 2010, tracking #70081140000208792283.
9  (44)  Plaintiff recorded the *Qualified Written Request* with the Pima County Recorder's
10  Office on January 19, 2010. (Docket 13727, Page 652)
11  (45)  Original Lender UAMC ignored our request for verification and validation of the debt
12  and did not respond within the mandated twenty-one (21) day timeframe.
13  (46)  Service provider COUNTRYWIDE ignored our request for verification and validation
14  of the debt and did not respond within the mandated twenty-one (21) day timeframe.
15  (47)  Plaintiff sent a *Notice of Default*, *Notice of Right to Cancel*, and *Notice of Revocation*
16  *of Power of Attorney* to UAMC on February 26, 2010, tracking #70092820000423262252.
17  (48)  Plaintiff sent a *Notice of Default*, *Notice of Right to Cancel*, and *Notice of Revocation of*
18  *Power of Attorney* to COUNTRYWIDE on February 26, 2010, tracking #70092820000423262269.
19  (49)  *Notice of Default*, *Notice of Right to Cancel* and *Notice of Revocation of Power of*
20  *Attorney* were delivered to UAMC and COUNTRYWIDE on January 20, 2010.
21  (50)  Plaintiff recorded the *Notice of Default* (Docket6 13755, Page 21, Sequence
22  201003900009), *Notice of Right to Cancel* (Docket 13755, Page 24, Sequence 20100390010), *and*
23  *Notice of Revocation of Power of Attorney* (Docket 13755, Page 28, Sequence 20100390011) with the
24  Pima County Recorder's Office on March 1, 2010.
25  (51)  Plaintiff sent a *Notice of Removal of Trustee* to UAMC on February 26, 2010,
26  removing North American Title Company as Trustee and naming North American Trust Title as the
27  new Trustee, tracking #70092820000423262252.
28  (52)  Notice of *Removal of Trustee* was delivered to UAMC on March 2, 2010.
29  (53)  Plaintiff sent a *Notice of Removal of Trustee* to service provider COUNTRYWIDE on
30  February 26, 2010, removing North American Title Company as Trustee and naming North American
31  Trust Title as the new Trustee, tracking #70092820000423262269.

| Plaintiffs Complaint | Case: |
|---|---|

(54) Notice of *Removal of Trustee* was delivered to service provider COUNTRYWIDE on March 6, 2010.

(55) Plaintiff sent a *Notice of Removal of Trustee* to North American Title Company as Trustee on February 26, 2010, naming North American Trust Title as the new Trustee, tracking #70092820000423262276.

(56) *Notice of Removal of Trustee* was delivered to North American Title Company as Trustee on March 3, 2010.

(57) Plaintiff sent a *Notice of Removal of Trustee* to MERS on February 26, 2010, naming North American Trust Title as the new Trustee, tracking #70092820000423262283.

(58) *Notice of Removal of Trustee* was delivered to MERS on March 5, 2010.

(59) On March 1, 2010, Plaintiff recorded with the Pima County Recorder's Office the *Notice of Default* (Docket 13755, Page 21), *Notice of Right to Cancel* (Docket 13755, Page 24), *Notice of Revocation of Power of Attorney* (Docket 13755, Page 28), and *Notice of Removal of Trustee* (Docket 13755, Page 31).

(60) Plaintiff filed a Quitclaim Deed on March 24, 2010, transferring the name from Michael Benson Sparlin and Sharon Jeanette Sparlin to 7922 S Clarkson Court Trust, a private contract trust. (Docket 13772, Page 622) (EXHIBIT 4)

(61) At some unknown time the service provider name changed from COUNTRYWIDE to BAC.

(62) By March 24, 2010, Plaintiffs had exercised their legal right, as defined under Truth-In-Lending and Regulation Z, and had sent the following documents:

- Qualified Written Request
- Notice of Default
- Revocation of Power of Attorney of Attorney
- Notice of Right to Cancel
- Notice of Removal of Trustee
- Demand for Clarifications
- Notice of Signature Revocations
- Demand for Production of Real Party in Interest
- Demand to Inspect Original Contract
- Demand for Validation of the Alleged Debt (per FDCPA)

| Plaintiffs Complaint | Case: |
|---|---|

- Demand for Audits of the Entire Account

(63) On or about April, 2010, Plaintiff began receiving correspondence from RECONTRUST. The notifications clearly indicated that the letters were "from a debt collector" and were "an attempt to collect a debt", thus making RECONTRUST "*debt collectors*" as defined by the meaning of the **FDCPA §803** and **15USC §1692a(6)**.

> "The term "*debt collector*" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

(64) Plaintiffs left the country for a three (3) week period in July, 2010 and upon arriving back found a number of additional letters from RECONTRUST attempting to "collect a debt".

(65) On or about August, 2010 Plaintiff began receiving correspondence from Coree E Neumeyer and Michael B Dvoren from the law firm of BRYAN CAVE LLP.

(66) Defendants COUNTRYWIDE, BAC, BOA, RECONTRUST, CAVE, DVOREN and NEUMEYER jointly made the decision to fraudulently move forward and attempt to sell Plaintiffs property.

(67) Plaintiff believes that these actions on the part of COUNTRYWIDE, BAC, BOA, RECONTRUST, CAVE, DVOREN and NEUMEYER were done with intent and malice.

(68) A Trustee Sale is currently scheduled for **June 17, 2011**. Even if the sale date is postponed, Plaintiff believes the sale to be imminent.

(69) Plaintiff revoked the Power of Attorney and removed the Trustee from the Deed of Trust in March, 2010 therefore, the *Substitution of Trustee* filed on April 19, 2010 is void and invalid (Docket 13790, Page 2566), the *Notice of Trustee's Sale* filed on April 19, 2010 (Docket 13790, Page 2570) is void and invalid, and finally, the *Substitution of Trustee* filed on April 19, 2010 (Docket 13790, Page 2568) is void and invalid.

(70) At some unknown point in time, MICHAEL B DVOREN from the law firm of BRYAN CAVE, LLP became counsel for RECONTRUST.

## GENERAL ALLEGATIONS
## COUNT 1
### VIOLATION OF THE
### GARN ST GERMAIN DEPOSITORY INSTITUTIONS ACT OF 1982
### ACT 12 USC 1701j-3(d)(8)

| Plaintiffs Complaint | Case: |
|---|---|

(71) Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(72) Defendants COUNTRYWIDE, BAC, BOA, MERS and RECONTRUST are in violation of The Garn St. Germain Depository Institutions Act of 1982, (U.S.C.) 1701j-3(d)(8) states:

> "With respect to a REAL PROPERTY LOAN secured by a lien on residential real property containing less than five dwelling units . . . . . a lender may not exercise its option pursuant to a due-on-sale clause upon a transfer into an inter vivos trust in which the borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property."

(73) In Matter of Sabato, 560 N.E.2d 62 (Ind. 1990), the court found no ethical problem with an attorney helping a client circumvent a "due on sale" provision using a land trust.

(74) In Alaska Bar Association Ethics Opinion #88-2, the committee declared "circumventing a contract term under these circumstances is not fraud or fraudulent conduct."

(75) The Illinois Bar Advisory Opinion No. 728 also concluded that "the breach of the contract of sale in contravention of the 'due on sale' clause is not a crime."

(76) The Virginia Bar reached a similar conclusion in Opinion 471 (1983).

(77) The United States Supreme Court recently declared that is not fraud to violate a "due on sale" if the borrower simply transfers title without saying anything to the lender. See Field v. Mans, 1995.S.Ct.207 (1995).

(78) In Medovoi v. American Savings & Loan, 89 Cal.App.3d 875 (1979) the court declared a lender could not sue the buyer for fraud for deliberately concealing a transfer, since he has no legal obligation to tell the lender of the transfer.

(79) Plaintiffs transferred property into an inter vivos trust on March 24, 2010, therefore, the Defendants may not legally exercise the due-on-sale clause.

## COUNT II
## DECLARATORY RELIEF
## BASED ON
## TILA/RESPA VIOLATIONS

(80) Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(81) Defendants COUNTRYWIDE, BOA, BAC, MERS and RECONTRUST failed to provide timely and adequate written responses to Plaintiffs QWR and requests for verification and validation of the alleged debt.

| Plaintiffs Complaint | Case: |
|---|---|

(82) Under RESPA, a "qualified written request" is:

"a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–
(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."
12 U.S.C. § 2605(e)(1)(B).

(83) Non-compliance is a violation of the act which gives rise to a claim for actual and statutory damages under **Section 6 of the Real Estate Settlement and Procedures Act (12 U.S.C. § 2605)(a)**

(56) The statute clearly states that if the creditor does not respond or responds deficiently, they are in default.

(57) Except where Congress has explicitly relieved lenders of liability for noncompliance, TILA is a **strict liability statute**. *(Truth-In-Lending, 5th Edition, National Consumer Law Center, 1.4.2.3.2, page 11).*

**WHEREFORE**, for all the reasons set forth in the above paragraphs, the Plaintiffs seek Declaratory Judgment that any claims and/or security interest that the Defendants, and each of them purports to hold, real or implied is void/extinguished as a result of violations in TILA/RESPA.

<u>COUNT III</u>
**VIOLATIONS OF THE**
**HELPING FAMILIES SAVE THEIR HOME ACT OF 2009**

(58) Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

(59) Section 404(a) of the **Helping Families Save Their Home Act of 2009** amended Section 131 of the Truth in Lending Act (15 U.S.C. §1641) in two ways, one of which was to add a requirement that borrowers be notified whenever ownership of their mortgage loan is transferred.[1] The new owner or assignee **MUST** notify the borrower in writing, within thirty days after the loan is sold or assigned, of its identity, address, telephone number, and the date of transfer and **location where the transfer is recorded**. (emphasis added)

---

[1] Pub. L. No. 111-22, §404, 123 Stat. 1632 (May 20, 2009), *codified* at 15 U.S.C. §1641(g)(1)(A)-(E).